# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STEELE SOFTWARE SYSTEMS, CORPORATION** | : | |
| Plaintiff/Judgment Debtor | : | CIVIL ACTION NO.: JFM-05-2017 |
| v. | : | |
| **DATAQUICK INFORMATION SYSTEMS, INCORPORATED** | : | |
| | : | |
| Defendant/Judgment Creditor | : | |

## MEMORANDUM OPINION

This case has been referred to me to preside over garnishment proceedings, Paper No. 60, which arise from the efforts of DataQuick Information Systems, Inc. ("DataQuick") to collect on a judgment issued in its favor against Steele Software Systems Corp. ("Steele Software") and its successor corporation, Three S Delaware, Inc. ("Three S").[1] After receiving judgment in its favor, DataQuick commenced discovery to obtain information that would allow it to satisfy the judgment. This Memorandum supplements the ruling that I issued from the bench during a telephone hearing held on August 31, 2006, which disposed of Paper Nos. 79, 96 and 112. At issue is the scope of DataQuick's Rule 34 document requests; specifically, whether the reach of Rule 34 extends to documents in the physical possession of Steele's corporate affiliates.

## Background

Steele initiated this action in an attempt to vacate an arbitration award that had been entered against it in DataQuick's favor. Paper No. 1. Things did not work out as Steele had

---

[1] Except where otherwise noted, Steele Software and Three S are collectively referred to herein as "Steele."

planned, and on January 17, 2006, this Court enforced the arbitration award and entered judgment for monetary damages as well as injunctive relief against Steele Software and its affiliates in the amount of $ 6,174,185.64. Paper No. 37.  Soon thereafter, in January 2006, Steele Software merged with Three S, with Three S being the surviving corporation.[2]  Paper No. 58, Exs. 2 & 3.

After the judgment was entered, DataQuick commenced discovery to aid in its enforcement of the judgment. On March 8, 2006, DataQuick served its first request for the production of documents on Steele. (Mot. to Compel at 3). Consistent with common practice, DataQuick's request for the production of documents contained a "Definitions" section.  In it, the term "you" was broadly defined as,

> Steele Software Systems Corp., its affiliates, subsidiaries, parents, officers, directors, agents, employees, shareholders, attorneys, predecessors and successors, including Scott Steele, Meneta Steele, SteeleSoft, Inc., SteeleSoft Management, LLC, Three S Delaware, Inc., 3S/RealServ, Inc., and Iautomortgage Corp.

(Resp. at 3). The document requests also sought 29 categories of documents, the substance of which are not relevant to the limited subject matter of this supplemental written opinion.

Steele's responses were due on April 7, 2006. On April 6, 2006, Steele Software requested an extension of time to respond.[3]  (Mot. to Compel at 3). DataQuick agreed to a limited extension under certain conditions, namely, that Steele Software file written responses to the document

---

[2] The merger filings state in pertinent part that "Steele Software" no longer exists, but that Three S would be subject to all of the Steele Software debts and obligations.  Paper No. 58, Ex. 4.

[3] At this point in the proceedings there was some confusion over who was representing Steele Software. The initial request for an extension of time was made by an attorney at Whiteford, Taylor & Preston, LLP ("Whiteford"), who had not entered his appearance on Steele's behalf. A second request for an extension was filed by Thomas & Libowitz, PA, Steele's counsel of record. Separate written responses to DataQuick's requests for the production of documents were ultimately filed by each law firm.  (Mot. to Compel at 3-5).

requests by April 10, 2006, and that responsive documents themselves be produced on a rolling basis between April 10, 2006 and April 24, 2006. *Id.*

Steele did file written responses as agreed. Predicably, the responses contained numerous objections to DataQuick's requests. For the limited purposes of this discussion, we are concerned only with Steele's general objection to the scope of the document requests. Specifically, Steele objected to DataQuick's definition of the term "you." Steele claimed that DataQuick's definition of this term was overly broad to the extent that Steele would be required to produce documents held by related corporate entities that were not parties to the litigation. (*See* Resp. at 3-4).

Steele failed to produce most of the documents requested, although it did turn over approximately seventy-five (75) documents to DataQuick, most of which related to the corporate formation of Three S Delaware, Inc., the successor corporation that had merged with Steele Software Systems after the entry of judgment against Steele Software. (Mot. to Compel at 5). On April 26, 2006, further document production was stayed when Steele filed a petition for bankruptcy in the United States Bankruptcy Court for the District of Delaware. Paper No. 61.[4]

When Steele emerged from bankruptcy in late June 2006, DataQuick immediately resumed its efforts to obtain documents from Steele pursuant to its document requests. (Mot. to Compel at 6-7). In response to DataQuick's efforts, Whiteford, which now represented Steele in these proceedings, informed DataQuick that Steele was not in a position to produce documents until the end of August. By this time, the documents were more than sixty (60) days overdue. (Resp. at 2).

---

[4] The bankruptcy ultimately was withdrawn by Steele during a hearing at which the presiding bankruptcy judge commented that the filing of the proceeding in Delaware, instead of Maryland, was an obvious attempt to forum shop.

DataQuick filed a motion to compel under Rule 37 seeking the production of the documents sought by its initial requests. Paper No. 79. With regard to the scope of the document requests, DataQuick argued that documents in the possession of the other Steele entities identified in its definition of "you" were within Steele's actual or constructive possession, custody or control, and therefore should be produced pursuant to Rule 34. (Mot. to Compel at 18). Steele argued that it should not be required to produce documents that are in the physical possession of other nonparty Steele-related entities because DataQuick's document requests were served only upon Steele Software and, moreover, were not within Steele Software's custody or control. (Resp. at 3-4). A telephone hearing was held on the motion on August 31, 2006, at which time I issued my rulings on this and other matters raised in DataQuick's motion to compel. However, because the reach of Rule 34(a) to nonparties has not been addressed recently by this Court or the Fourth Circuit, I have decided to publish a written memorandum and opinion further explaining my ruling, with the hope that it may be of assistance to the bench and the bar in resolving similar disputes in the future.

**Discussion**

Rule 34 of the Federal Rules of Civil Procedure governs the production of documents and tangible things in civil discovery. FED. R. CIV. P. 34. Rule 34(a) permits a party to serve on any other *party* a request for the production of documents or things within that *party's* "possession, custody *or* control." Fed. R. Civ. P. 34(a)(emphasis added). With regard to non-parties, Rule 34(c) contemplates that they may be required to produce documents through the use of a subpoena issued under Rule 45. The issue before me is whether a party should be required to produce documents that are within its "control" for the purposes of Rule 34(a), but that are in the

physical possession of another entity that is not a party. This issue necessarily turns on whether a party has "control" of the documents at issue for the purposes of Rule 34(a). Although the rule itself does not directly address this issue, the case law has filled in the gaps.

It is well established that a district court may order the production of documents in the possession of a related nonparty entity under Rule 34(a) if those documents are under the custody or control of a party to the litigation. *See, e.g., Societe Internationale Pour Particpacions Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S.197, 204 (1958); *Evenflo Co., Inc. v. Hantec Agents Unlimited*, 2006 WL 1580221 (S.D. Ohio 2006); *Uniden America Corp. v. Ericsson, Inc.*, 181 F.R.D. 302, 305 (M.D.N.C. 1998); *Hubbard v. Rubbermaid*, 78 F.R.D. 631, 637 (D.Md. 1978). "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought on demand." *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000)(citations omitted)(applying the interpretation of control under Rule 34 to a Rule 45 subpoena). This Court ordered Rule 34 production by a nonparty in *Hubbard v. Rubbermaid*, an employment case in which the defendant was ordered to produce documents in the possession of two wholly owned nonparty subsidiaries. In ordering the production, Judge Blair observed that "[t]he crucial factor is that the documents must be in the custody or under the control of a party to the case." 78 F.R.D. at 637. The specific form of the corporate relative involved does not matter, *i.e.*, whether it is a parent, sister, or subsidiary corporation. Courts are able to disregard corporate form to prevent, among other things, "misleading actions whereby corporations try to hide documents or make discovery of them difficult." *Uniden*, 181 F.R.D. at 306.

Several factors are relevant to determining whether a party has control over documents

that are in the possession of a related nonparty for the purpose of Rule 34.  In *Afros S.P.A. v. Kraus-Maffei Corporation*, 113 F.R.D. 127, 130 (D. Del. 1986), the court identified three: (1) the corporate structure of the party/nonparty, (2) the nonparty's connection to the transaction at issue in the litigation, and (3) the degree that the nonparty will benefit from the outcome of the case. *Id*. at 331.  Other relevant factors include whether the related entities exchange documents in the ordinary course of business, and whether the nonparty has participated in the litigation. *Uniden*, 181 F.R.D. at 306.

Common relationships between a party and its related nonparty entity are particularly important to the determination of control.  Critical factors here include the ownership of the nonparty, any overlap of directors, officers, and employees, and the financial relationship between the two entities. *Afros S.P.A.*, 113 F.R.D. at 130.  Control has been found where the party and its related nonparty affiliate are owned by the same individual. For example, in *Perini America, Inc. v. Paper Converting Machine Co.*, the court found that a party and its nonparty parent company were alter egos of the same owner, who served as the president and chief operating officer of the subsidiary and the president of its nonparty parent corporation. 559 F.Supp. 552 (E.D. Wis. 1983). The related companies also shared a common member on their board of directors. *Id*. Likewise, in *Evenflo*, the court ordered the production of documents in the possession of related companies owned by the party's father. 2006 WL 1580221 at *3-4.  Common control of documents is also found where related entities share management. For example, in *Uniden*, the court found evidence of control where the executive vice president of the litigating parent corporation reported to the subsidiary's general manager and vice president, who was regarded as his boss. 181 F.R.D. at 307.

Other factors may be equally important depending on the facts and circumstances of a particular case. For example, in *Afros S.P.A.*, the court stressed the relationship of the parent corporation to the underlying litigation because the parent had assigned the patents at issue to its litigating subsidiary. 113 F.R.D. at 132. The fact that the corporate relatives shared documents on a regular basis was considered in *Uniden*, as was the fact that the nonparty parent had a direct interest in the outcome of the litigation. 181 F.R.D. at 307.

Documents in the possession of a nonparty are not automatically subject to discovery under Rule 34 simply because the nonparty has a corporate relationship to a party to the litigation. Ordinarily, a party seeking the production of documents from a nonparty must provide specific facts demonstrating that some or all of the foregoing factors of control are present. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 663 (D. Kan. 1999). *See also Uniden*, 181 F.R.D. at 307 ("if the factors are present, then an inference of control is found."). Because the burden of proof rests with that party seeking production, therefore "[a]n unsubstantiated assertion [of control] generally does not suffice." *Id.* The burden may shift, however, when the party from whom production is sought fails to respond to assertions of control when given the opportunity to do so. *Contracom*, 189 F.R.D. at 663.

In this case, it is clear that documents in the possession of the Steele entities identified in DataQuick's definition of "you" are under the practical control of Steele and its owner, Scott Steele. First, the Steele entities share common ownership. Scott Steele is the owner (directly and indirectly), sole shareholder, and president of all Steele entities except for 3S/Realserv, Inc., whose president and owner is his seventy-four (74) year old mother, Meneta Steele. Meneta Steele was also the corporate secretary of Steele Software and now holds the same position with

its successor, Three S Delaware, Inc. She is represented by the same counsel that represents Steele in the instant case.

Steele's corporate entities also are closely related. In December 2004 SteeleSoft, Inc. entered into a stock exchange agreement with Steele Software. In January 2004, Three S merged with Steele Software, assuming all of its debts. SteeleSoft is the parent and sole shareholder of Three S, and Scott Steele is the sole shareholder in SteeleSoft. SteeleSoft's website identifies 3S/RealServ, Inc. as a "SteeleSoft company," and iautomortage corporation as an "affiliate of SteeleSoft." The interrelation between these entities is obvious, a fact that Judge Motz acknowledged by granting injunctive relief against, not only Steele Software, but "Steele Software and all affiliated entities" in his January 17, 2006 Order. Paper No. 37. Finally, the practical burden on Steele of producing these documents will be minimal. The documents should be readily available to Steele considering that all Steele companies are operated out of the same location.

DataQuick has asserted more than enough facts to show the requisite degree of control by Steele. Even if it had not, however, Steele presented no facts or case law that would militate against a finding of control when it had the chance to do so. Although DataQuick asserted many of the above described facts regarding the relationship between Steele and the other nonparty entities in its Motion to Compel, Steele's response was to argue, in a conclusory fashion, that "DataQuick has failed to provide authority to support the proposition that a document request served on a single party creates a legal obligation to produce documents upon other entities who are not parties to the proceeding." (Resp. at 4). Steele chose not to particularize the reasons why this argument would preclude its production of documents by, for example, citing any case law or

8

setting forth any facts that would demonstrate that the documents requested were not under its possession, custody or control. This response was inadequate.

For the foregoing reasons, I find that DataQuick has produced more than enough evidence to demonstrate that Steele has control over documents in the possession of the corporate relatives identified by DataQuick. Therefore, as I already ruled during the August 31, 2006 hearing, DataQuick's Motion to Compel is GRANTED. Steele's document production shall include responsive documents in the possession of the Scott Steele, Meneta Steele, SteeleSoft, Inc., SteeleSoft Management, LLC, Three S Delaware, Inc., 3S/RealServ, Inc., and Iautomortgage Corp.

/S/
Paul W. Grimm
United States Magistrate Judge

kmw